# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WYETH HOLDINGS CORPORATION, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 08-00981 (HHK)

## MOTION TO DISMISS

Defendants in this action, the United States Department of Health and Human Services; the United States Food and Drug Administration; Michael O. Leavitt, Secretary of Health and Human Services; Andrew C. von Eschenbach, M.D., Commissioner of Food and Drugs; the United States Patent and Trademark Office; and Jon W. Dudas, Director of the United States Patent and Trademark Office, hereby move to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The grounds for this motion are stated in greater detail in the memorandum of points and authorities filed in support of this motion.

Of Counsel:

THOMAS R. BARKER
Acting General Counsel

GERALD F. MASOUDI
Associate General Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

JAMES R. JOHNSON
Assistant Chief Counsel, Litigation
U.S. Dept. of Health & Human
  Services
Office of the General Counsel
5600 Fishers Lane, GCF-1
Rockville, Maryland 20857
Telephone: (301) 827-5212


SYDNEY O. JOHNSON, Jr.
Acting Solicitor

NATHAN K. KELLEY
RAYMOND T. CHEN
Associate Solicitors
U.S. Patent and Trademark Office
Office of the Solicitor
P.O. Box 15667
Arlington, VA 22215
(571) 272-9035

Date: August 8, 2008

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

C. FREDERICK BECKNER III
Deputy Assistant Attorney General

EUGENE M. THIROLF
Director


_____/s/_____
DRAKE CUTINI
Attorney
Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
Telephone: (202) 307-0044
Facsimile: (202) 514-8742
drake.cutini@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

WYETH HOLDINGS CORPORATION,   )
et al.,   )
   )
       Plaintiffs,   )
   )
     v.   )      Civil Action No. 08-00981 (HHK)
   )
U.S. DEPARTMENT OF HEALTH AND   )
HUMAN SERVICES, et al.,   )
   )
       Defendants.   )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs ("Wyeth") brought this action under the Administrative Procedure Act ("APA"), seeking a longer patent term extension for their animal drug product CYDECTIN® (moxidectin) Pour-On ("Cydectin") than the one permitted under a decision by the United States Food and Drug Administration ("FDA"). A patent term extension extends the term of a patent for time lost to regulatory review. The length of an extension is based on the length of the regulatory review period for the drug which occurred after the patent was granted. The regulatory review period is composed of a testing phase and an approval phase, and the extension is calculated by adding half of the length of the testing phase to all of the length of the approval phase.

In this case, the patent term extension permitted to Wyeth is approximately 3.9 years (the maximum allowable is five years). The relevant patent, U.S. Patent No. 4,916,154 ("the '154 patent"), would have originally expired by its terms on April 10, 2007, but under the extension it

will expire on March 14, 2011. Wyeth seeks a longer term, thus extending the time during which

it may be able to market Cydectin without competition from generic versions of the same

product. Wyeth's allegations, however, are based on a misinterpretation of the plain words of the

governing statute. In this case there is no dispute about when the testing phase of Cydectin

started (April 1990), and when Cydectin was approved (January 28, 1998). Wyeth disputes

FDA's determination of when the approval phase started: FDA determined it to be January 13,

1998, and Wyeth contends it was August 8, 1995.

  The start of the approval phase is governed by 35 U.S.C. § 156(g)(4)(B)(ii), which

unambiguously establishes that the approval phase begins when an application is initially

submitted. Significant to this case is that Wyeth chose to take advantage of FDA's "phased

review" application process for Cydectin. Under the traditional review process, a sponsor

submits its application (called a new animal drug application, or "NADA") after it has completed

all required testing and investigation of its product. Under the phased review process, an

applicant submits portions or sections of information in stages before it submits its NADA.

These sections are not submitted as part of the NADA, but are submitted into an investigative

file, as explained in greater detail below. FDA reviews these sections as they are submitted. The

application, or NADA, is submitted after FDA review of these various sections is complete. The

time it takes to review an application under the phased review process is usually shorter than the

time it takes for review under the traditional process. Although plaintiffs argue that the short

approval phase in this case is unreasonable, it is not at all unreasonable when phased review is

used. The trade-off, as FDA has noted in guidance to the industry, is that the patent term

extension is usually shorter for drugs approved using the phased review than traditional review.

Wyeth, however, is trying to have it both ways; i.e., utilization of the phased review procedure and a longer patent term extension.  This attempt should be rejected.  Under the plain terms of the statute, as noted above, the approval phase begins when an application is submitted. The Federal Food, Drug, and Cosmetic Act ("FDCA") makes clear that an application must contain all information necessary for approval.  Thus, the separate sections submitted to the investigational file during the phased review process do not qualify as an application.  In applying the statute to the regulatory review period of Cydectin, FDA found that the approval phase began in 1998 when Wyeth submitted its application, which included all of the previously submitted sections.  On the other hand, Wyeth contends that the approval phase began when it submitted the first technical section to the investigational file in 1995.  However, this single section that Wyeth submitted in 1995 was not an "application" under the terms of the statute. For the purposes of new animal drugs, FDA has consistently interpreted the term application in § 156(g)(4)(B)(ii) to mean a complete application (NADA).  The single submission of a technical section to an investigational file is not an application, and clearly not a complete application.

In determining that the approval phase for Cydectin began on January 13, 1998, FDA has complied with the clear terms of the statute, and FDA's determination may be upheld on that ground alone.  Nevertheless, even if the statute were considered ambiguous in any respect, FDA's determination was reasonable and fully in accord with the language, structure, and purpose of the statute, as well as applicable FDA regulations, agency policy, and administrative precedent.  Hence, whether this case is analyzed under the plain terms of the statute or FDA's decision is viewed as interpreting an ambiguous term in the statute, this case presents a question

of law, and the Court should uphold FDA's administrative decision and dismiss the complaint.

## BACKGROUND

### I.    Statutory and Regulatory Framework

#### A.    FDA's Regulation of New Animal Drugs

Under the FDCA, a new animal drug is defined as "any drug intended for use for animals other than man, including any drug intended for use in animal feed . . . ."  21 U.S.C. § 321(v). The term drug is defined, in relevant part, as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and . . . articles (other than food) intended to affect the structure or any function of the body of man or other animals . . . ."  21 U.S.C. § 321(g)(1).  Before a new animal drug can be legally marketed, a sponsor must submit, and FDA must approve, a marketing application (NADA).  21 U.S.C. § 360b(a).  Without an approved NADA, a new animal drug is deemed unsafe and adulterated.  21 U.S.C. §§ 360b(a)(1)(A), 351(a)(5).  To obtain FDA approval of an NADA, a sponsor must demonstrate, among other things, that the drug is safe and effective for its intended uses.  21 U.S.C. § 360b(b); 21 C.F.R. § 514.1(b)(8).  If the product is intended to be used in a food-producing animal, the sponsor must also demonstrate that the new animal drug product is safe for human consumption, and that the edible animal products remain free of unsafe drug residues.  21 U.S.C. § 360b(d)(2); 21 C.F.R. § 514.1(b)(7).  An application for a new animal drug is required to include all components and information required by 21 U.S.C. § 360b(b)(1) and 21 C.F.R. § 514.1(b).

4

**B.    Traditional vs. Phased Review**

A sponsor may choose to submit the technical sections that fulfill the requirements for approval for either traditional or phased review. <u>See</u> The Administrative New Animal Drug Application Process - Draft Guidance to Industry #132 (Nov. 6, 2002) ("Guidance #132"), Administrative Record ("AR") 107-114. The time it takes to approve an application under phased review usually will be shorter than the time it takes to approve an application through traditional review. <u>Id.</u>, AR 114. The decision to proceed under traditional or phased review is purely voluntary. <u>Id.</u>, AR 109.

Under the traditional review process, a sponsor first conducts the required investigation and testing of the drug; when this testing phase is complete, the sponsor submits an NADA containing all the necessary information. 21 U.S.C. § 360b(b)(1); 21 C.F.R. § 514.1(b). FDA then begins the approval phase of the NADA. 21 U.S.C. § 360b(c).

If a sponsor elects to use the phased review process, the sponsor may submit technical sections and supporting information and data during the testing phase of the new animal drug. Guidance #132, AR 109. Under phased review, the technical submissions of information and data made during the testing phase are not submitted as an NADA, but instead are submitted to an Investigational New Animal Drug ("INAD") file, pursuant to an investigational exemption under 21 U.S.C. § 360b(j). <u>Id.</u>; <u>see also</u> Center for Veterinary Medicine Document and Submission Information – An Update, April 1995 ("CVM Update 1995"), AR 16. If a technical section submitted to the INAD file meets the requirements of 21 C.F.R. § 514.1, FDA will issue a technical section "complete letter" for that technical section. Guidance #132, AR 112.

5

During this process, the approval phase begins when the NADA is submitted pursuant to

21 U.S.C. § 360b(b) of the FDCA.  Letter to Christopher N. Sipes, Covington & Burling LLP,

from Jane Axelrad, Associate Director for Policy, CDER, May 7, 2008 ("May 7, 2008, Letter"),

AR 185; Guidance #132, AR 113-114.  The NADA must address all required technical sections

or the application may be refused.  CVM Update 1995, AR 19-20; Guidance #132, AR 112;

May 7, 2008, Letter, AR 183, 185.  An NADA that is submitted under the phased review process

is called an "Administrative NADA."  Guidance #132, AR 112.  A sponsor's Administrative

NADA may incorporate by reference any technical section the sponsor has previously submitted

to the INAD file and for which the sponsor has received a technical section complete letter.

CVM Update 1995, AR 19; May 7, 2008, Letter, AR 183.  The approval phase does not begin

until FDA receives an Administrative NADA because it is at this point that the agency should

have all the information necessary for approval under 21 U.S.C. § 360b(b) and 21 C.F.R. §

514.1, as well as the corresponding technical section complete letters, to permit FDA to

determine whether all the data for all technical sections – when viewed as a whole – support

approval.  Guidance #132, AR 113; May 7, 2008, Letter, AR 185.

     **C.**    **The Patent Term Restoration Act**

The Drug Price Competition and Patent Term Restoration Act of 1984 (known as the

"Hatch-Waxman Amendments") enabled patent holders to extend the term of their patents for

human drugs, medical devices, food additives, and color additives to recover some of the time

lost due to regulatory review.  See Pub. L. No. 98-417, 98 Stat. 1585 (1984).  The Hatch-

Waxman Amendments did not encompass animal drugs.  Id.  In 1988, Congress passed the

Generic Animal Drug and Patent Term Restoration Act  ("GAD/PTR Act") to include animal

drugs and veterinary biologics among those products eligible for patent term extensions.  See

Pub. L. No. 100-670, 102 Stat. 3971 (1988).  The GAD/PTR Act used substantially similar

language to the "Hatch-Waxman Amendments, and was intended to extend the existing statutory

framework for human drugs to animal drugs."  See H.R. Rep. No. 100-972, pt. 1, at 8 (1988)

("[the GAD/PTR Act] simply makes the additions to [Hatch-Waxman Amendments] necessary

to include animal drugs and veterinary biologicals within the existing statutory framework");

H.R. Rep. No. 100-972, pt. 2, at 20 (1988) (stating the same); see also Patent Term Restoration

Regulations (Proposed Rule), 56 Fed. Reg. 5784, 5785 (Feb. 13, 1991) (preamble to proposal for

regulations later codified at 21 C.F.R. Part 60) ("The [GAD/PTR] Act (Pub. L. No. 100-670)

achieved this goal in November 1988 by amending the existing patent term restoration provisions

at 35 U.S.C. § 156 to include animal drug products and biologics.").

Under 35 U.S.C. § 156, certain patents covering animal drugs are eligible for a patent

term extension if patent life was lost during a period when the product was undergoing a

regulatory review period.  A "regulatory review period" is the sum of two periods of time:  a

"testing phase" and an "approval phase."  35 U.S.C. § 156(g)(4)(B); 21 C.F.R. § 60.22(d).  For

new animal drugs approved under 21 U.S.C. § 360b(b), the "testing phase" begins on the earlier

of (1) the effective date of an INAD exemption, or (2) the date a major health or environmental

effects test on the drug was initiated.  35 U.S.C. § 156(g)(4)(B)(i); 21 C.F.R. § 60.22(d)(1).  The

"testing phase" ends on the date an application is initially submitted to FDA under 21 U.S.C.

§ 360b(b).  Id.  The "approval phase" begins on the date an application is initially submitted to

FDA under 21 U.S.C. § 360b(b) and ends on the date the application is approved.  35 U.S.C.

§ 156(g)(4)(B)(ii); 21 C.F.R. § 60.22(d)(2).  FDA's regulations state that a marketing application

"is initially submitted on the date it contains sufficient information to allow FDA to commence review of the application."  21 C.F.R. § 60.22(f) (emphasis added).

FDA has consistently determined that the approval phase for a new animal drug application utilizing the phased review process does not begin until an application that includes all components and information required by 21 U.S.C. § 360b(b)(1) and 21 C.F.R. § 514.1(b) is submitted.  See, e.g., Determination of Regulatory Review Period for Purposes of Patent Extension, Neutersol, 69 Fed. Reg. 40944 (July 7, 2004) ("Neutersol Notice"); Determination of Regulatory Review Period for Purposes of Patent Extension, Anipryl®, 63 Fed. Reg. 41578 (August 4, 1998) ("Anipryl® Notice"); Determination of Regulatory Review Period for Purposes of Patent Extension, Ivomec®, Eprinex<TM> Pour-On Beef and Dairy Cattle, 63 Fed. Reg. 36922 (July 8, 1998) ("Ivomec® Notice"); see also Guidance #132, AR 113-14.

Ordinarily, patent terms for animal drugs may be extended by the sum of (i) half of the length of the testing phase, and (ii) all of the length of the approval phase of the "regulatory review period."  35 U.S.C. §§ 156(c), 156(g)(4); 21 C.F.R. § 60.22(d).  The patent term extension statute imposes some additional restrictions on the length of time an animal drug patent may be extended.  First, if the patent applicant did not act with due diligence during the regulatory review period, the patent term extension must be reduced by the amount of time that the applicant caused undue delay.  35 U.S.C. § 156(c)(1).  Second, the period of time remaining in the patent term, after marketing approval and a term extension, may not exceed fourteen years.  35 U.S.C. § 156(c)(3).  Finally, a patent term may not be extended by more than 5 years, even if the regulatory review period is longer than 5 years.  35 U.S.C. § 156(g)(6)(A).

Under section 156, the United States Patent and Trademark Office ("USPTO") and the

8

FDA jointly determine the patent term extension.  See Astra v. Lehman, 71 F.3d 1578, 1581

(Fed. Cir. 1995).  While the USPTO receives the application for extension, calculates the

extension based on the regulatory review period, and issues the certificate of extension, it is the

FDA that determines the actual length of the regulatory review period.  Id.

## II.     Procedural History

### A.     Cydectin

Cydectin is an animal drug product for the treatment and control of internal and external

parasites in beef and dairy cattle.  Compl. ¶ 44.  On April 10, 1990, the USPTO issued the '154

patent (titled "23-Imino Derivatives of LL-F28249 Compounds"), which covers Cydectin.

Compl. ¶¶ 45, 49-51.  The original expiration date of the '154 patent was April 10, 2007.

Compl. ¶ 52.  Plaintiff purports to be the current assignee of the '154 patent, and owner of all

rights, title, and interests in and to the '154 patent.  Compl. ¶ 48.

### B.     The Regulatory Review of Cydectin

#### 1.     The Testing Phase

Plaintiffs elected to use the phased review process in seeking FDA-approval of Cydectin.

Compl. ¶ 57.  Plaintiffs formally asked FDA to establish an INAD file for the use of the new

animal drug Cydectin in a food-producing animal on or about March 26, 1990.  Compl. ¶ 55.

FDA established the INAD file on April 5, 1990, marking the date that the testing exemption

under 21 U.S.C. § 360b(j) became effective.  Compl. ¶ 56; see also Determination of Regulatory

Review Period for Purposes of Patent Extension; Cydectin, 71 Fed. Reg. 54993 (Sept. 20, 2006)

("Cydectin Notice"), AR 121.  Accordingly, plaintiffs periodically submitted information and

data to the INAD file during the testing phase of their new animal drug.  Compl. ¶¶ 58, 61-65.

Plaintiffs made their first submission of information and data, "The Residue Chemistry technical section," to the INAD file on August 8, 1995.  Compl. ¶¶ 3, 58.  Plaintiffs submitted the final technical section, "Environmental Safety," to the INAD file on August 14, 1996.  Compl. ¶¶ 65, 66.  However, plaintiffs amended that final technical section on June 13, 1997.  See Request for Revision of Regulatory Review Period from Christopher N. Sipes, Covington & Burling LLP to Docket No. 2004E-0040 (CYDECTIN) ("Request"), AR 137.  FDA issued the last complete letter for the technical sections on January 13, 1998.  Compl. ¶¶ 64, 68.  It was not until January 13, 1998, based on the final technical section "complete letter," that plaintiffs could submit an application for a new animal drug which included all components and information required by 21 U.S.C. § 360b(b)(1) and 21 C.F.R. § 514.1(b).  Compl. ¶ 68; May 7, 2008, Letter, AR 185.

### 2.    The Approval Phase

On January 13, 1998, plaintiffs submitted its application for Cydectin and FDA designated it as NADA 141-099.  Compl. ¶¶ 68, 84; Cydectin Notice, 71 Fed. Reg. 54993, AR 121-122.  This marked the end of the testing phase and the beginning of the approval phase.  Cydectin Notice, 71 Fed. Reg. 54993, AR 121-122; May 7, 2008, Letter, AR 185.  FDA approved NADA 141-099 on January 28, 1998.  Compl. ¶¶ 54, 70; Cydectin Notice, 71 Fed. Reg. 54994, AR 122.

### C.    Plaintiffs' Patent Term Extension Application

On March 27, 1998, plaintiffs submitted a Request for Extension of Patent Term with the USPTO for its '154 patent.  AR 37-106; Compl. ¶ 71.  On April 6, 2004, FDA advised the USPTO that Cydectin had undergone a regulatory review period and that the approval of Cydectin represented the first permitted commercial marketing or use of the product.  Cydectin

Notice, 71 Fed. Reg. 54993, AR 121.  Shortly thereafter, the USPTO requested that FDA

determine the product's regulatory review period.  Id.

### 1.    FDA's Determination of the Regulatory Review Period

On September 20, 2006, FDA published its determination of the regulatory review period

for the patent term extension of Cydectin in the Federal Register.  Cydectin Notice, 71 Fed. Reg.

54993, AR 119-123.  FDA determined that the applicable regulatory review period for Cydectin

was 2,857 days.  Compl. ¶ 82; Cydectin Notice, 71 Fed. Reg. 54993, AR 121.  Of this time,

2,841 days occurred during the testing phase, while 16 days occurred during the approval phase.

Id.  FDA determined that the testing phase began on April 5, 1990 (the date the INAD file was

established) and ended on January 13, 1998 (the date plaintiffs initially submitted NADA 141-

099).  Id.  FDA determined that the approval phase began on January 13, 1998 (the date plaintiffs

initially submitted NADA 141-099) and ended on January 28, 1998 (the date FDA approved

NADA 141-099).  Id., AR 121-122.  Based on FDA's determination of the regulatory review

period, on June 13, 2007, the USPTO issued a notice of final determination indicating that

plaintiffs' '154 patent should be extended 1,434 days – an extension of approximately 3.9 years.

Compl. ¶ 88.  Therefore, the expiration of plaintiffs' '154 patent was extended from April 10,

2007, to March 14, 2011.  Compl. ¶ 89.

### 2.    Plaintiffs' Request for Revision of the Regulatory Review Period

Plaintiffs filed a Request for Revision of the Regulatory Review Period with FDA on

November 20, 2006.  Compl. ¶ 96; Request, AR 126-177.  Plaintiffs' request argued that because

the first technical section (Residue Chemistry) was submitted to the INAD file on August 8,

1995, that is the date plaintiffs' NADA for Cydectin was submitted.  Id., AR 138.  Plaintiffs

argued: "At that point [when the first technical section was submitted] there was 'sufficient information to allow FDA to commence review of the application.'" Id. Plaintiffs argued this position even though plaintiffs acknowledged that a technical section was amended as late as June 13, 1997, and that the last technical section was not deemed to be complete until January 13, 1998. Id., AR 137. Plaintiffs' request alleged that the testing phase was 1952 days and the approval phase was 905 days. Id., AR 142.

### 3.   FDA's Denial of Plaintiffs' Request for Revision of the Regulatory Review Period

By letter dated May 7, 2008, FDA denied plaintiffs' November 20, 2006, Request for Revision of the Regulatory Review Period. May 7, 2008, Letter, AR 181-185. In upholding its earlier determination of the regulatory review period of Cydectin (as published in the Federal Register), FDA disagreed with plaintiffs assertion that August 8, 1995, was the date the NADA was initially submitted. May 7, 2008, Letter, AR 184-185. FDA determined that for phased review of new animal drug products, the approval phase "begins when the Administrative NADA, including all of the technical sections required for approval of the new animal drug under 21 C.F.R. § 514.1 and the corresponding technical section complete letters, is submitted under section 512 of the Act [21 U.S.C. § 360b(b)]." May 7, 2008, Letter, AR 185. Therefore, January 13, 1998, is the date plaintiffs initially submitted their application to begin the approval phase of Cydectin. Id. FDA explained that the regulatory review determination for phased review of new animal drugs correlates to the regulatory review determination for human drug applications, in that the approval phase does not begin until an application has been submitted which includes all required information. Id. FDA also noted that the technical sections were

submitted to an INAD file, not as an NADA, and any regulatory review of an Investigational

New Animal Drug file is conducted during the investigational phase (the testing phase) of the

regulatory review period.  Id.  FDA stated that, although phased review "can result in a very short

approval phase, it is most consistent with the idea that alternative drug development and review

approaches are intended to permit the applicant to respond to FDA input as the application is

developed, making FDA's review more efficient, and shortening the time required for review of

the application."  Id.

**ARGUMENT**

On June 6, 2008, plaintiffs filed a complaint initiating this action alleging that FDA's

final determination of the regulatory review period for Cydectin should be set aside.  For the

following reasons, the complaint should be dismissed.

**I.      Standard of Review**

**A.      Motion to Dismiss**

This case involves the plain language of the governing statute; as such, it presents a

question of law and a motion to dismiss is appropriate.  A Rule 12(b)(6) motion does not test the

truth of the factual allegations in the complaint.  Rather, it challenges the legal sufficiency of the

complaint.  ACLU v. Barr, 952 F.2d 457, 467 (D.C. Cir. 1991).  A party bringing a Rule 12(b)(6)

motion "is entitled to judgment if there are no allegations in the complaint which, even if proven

would provide a basis for recovery."  Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C.

2002).  When reviewing a motion to dismiss under Rule 12(b)(6), "[t]he court must accept as

true all of the plaintiff's well-pled factual allegations and draw all reasonable inferences in favor

of the plaintiff; however, the court does not need to accept as true the plaintiff's legal

13

conclusions." Arbitraje Casa de Cambio v. USPS, 297 F. Supp. 2d 165, 168 (D.D.C. 2003). See also Papasan v. Allain, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (courts "accept neither 'inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint,' nor 'legal conclusions cast in the form of factual allegations.'"); Major v. Plumbers Local Union No. 5, 370 F. Supp. 2d 118, 123 (D.D.C. 2005) ("Conclusory legal and factual allegations . . . need not be considered by the court."); Luck's Music Library, Inc. v. Ashcroft, 321 F. Supp. 2d 107, 112 (D.D.C. 2004).

Even if this case did not involve only the language of the statute, a 12(b)(6) motion is proper when the Court is reviewing an agency action. See Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993) ("The entire case on review is a question of law, and only a question of law. And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage."). Also, "the district court can consult the record to answer the legal question before the court – in this case whether the agency adhered to the standards of decisionmaking required by the APA." Id.

**B.      Review of FDA's Administrative Decision**

FDA's administrative decisions are subject to review by the Court under the APA, and may be disturbed only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard is highly deferential to the agency. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). "There is a

presumption in favor of the validity of the administrative action." Bristol-Myers Squibb Co. v.
Shalala, 923 F. Supp. 212, 216 (D.D.C. 1996). The reviewing court must consider whether the
agency's decision was based upon consideration of the relevant factors and whether there has
been a clear error of judgment. Overton Park, 401 U.S. at 416. However, "under this narrow
scope of review, '[t]he court is not empowered to substitute its judgment for that of the agency.'"
Bristol-Myers, 923 F. Supp. at 216 (quoting Overton Park, 401 U.S. at 416).

When, as here, the Court is reviewing an agency's construction of statutory provisions,
the two-step analysis of Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467
U.S. 837 (1984), governs. First, the Court must inquire "whether Congress has directly spoken
to the precise question at issue;" if Congress's intent is clear, the Court "must give effect to
[such] unambiguously expressed intent." Id. at 842-43 ("Chevron step one"). Formulated
another way, the Court must initially decide "whether the statute unambiguously forbids the
Agency's interpretation." Barnhart v. Walton, 535 U.S. 212, 218 (2002). "[T]he starting point . .
. in any case involving the meaning of a statute, is the language of the statute itself." United
States Dep't of Treasury v. Fabe, 508 U.S. 491, 500 (1993) (quoting Group Life & Health Ins.
Co. v. Royal Drug Co., 440 U.S. 205 (1979)). Indeed, as the D.C. Circuit has observed, "the best
guide to what a statute means is what it says." Stewart v. Nat'l Shopmen Pension Fund, 730 F.2d
1552, 1561 (D.C. Cir. 1984). Therefore, when interpreting a statute, "a court should always turn
first to one, cardinal canon before all others. We have stated time and again that courts must
presume that a legislature says in a statute what it means and means in a statute what it says
there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992).

Second, if Congress has not "directly" addressed "the precise question at issue," the Court

15

may not "impose its own construction on the statute." Chevron, 467 U.S. at 843 ("Chevron step

two"). Rather, it must determine if the agency's interpretation is based on "a permissible

construction of the statute." Id.

Under Chevron step two, deference applies when, as here, "Congress delegated authority

to the agency generally to make rules carrying the force of law." Gonzales v. Oregon, 546 U.S.

243, 244 (2006) (quoting United States v. Mead Corp., 533 U.S. 218, 226-27 (2001)).

"Delegation of such authority may be shown in a variety of ways." Mead Corp., 533 U.S. at 227.

With 35 U.S.C. § 156, Congress has authorized and directed FDA to determine the regulatory

review period, from which the patent term extension is derived, for products it regulates. See,

e.g., 35 U.S.C. §§ 156(d)(1)(C), 156(d)(2)(A)(ii), 156(d)(2)(B)(i), and 156(d)(2)(B)(ii); see also

Astra v. Lehman, 71 F.3d at 1578-79 ("the determination of the regulatory review period, from

which the patent term extension is derived, is committed by statute to the Secretary of [HHS] or

the Secretary's delegate, here the [FDA]"). Further, the Supreme Court has explained that

Chevron deference is appropriate when "the interstitial nature of the legal question, the related

expertise of the Agency, the importance of the question to administration of the statute, the

complexity of that administration, and the careful consideration the Agency has given the

question over a long period of time all indicate that Chevron provides the appropriate legal lens

through which to view the legality of the Agency interpretation here at issue." Barnhart, 535

U.S. at 222. Thus, deference is appropriate here because of "the complexity of the statutory

regime" and "FDA's expertise." Mylan Labs., Inc. v. Thompson, 389 F.3d 1272, 1280 (D.C. Cir.

2004).

Accordingly, the D.C. Circuit has repeatedly given Chevron deference to FDA's

16

interpretation of the FDCA, as well as the agency's own implementing regulations.  See, e.g.,

Novartis Pharms. Corp. v. Leavitt, 435 F.3d 344, 349 (D.C. Cir. 2006) ("We have held on a

number of occasions that FDA interpretations of the FDCA receive deference, as do its

interpretations of its own regulations unless plainly erroneous or inconsistent with the

regulations."); Mylan v. Thompson, 389 F.3d at 1281; Purepac Pharm. Co. v. Thompson, 354

F.3d 877, 883 (D.C. Cir. 2004); Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1319, 1320 (D.C.

Cir. 1998) (citing Auer v. Robbins, 519 U.S. 452, 461 (1997)).  That same deference applies here

even though one of the governing statutory provision is a patent statute, 35 U.S.C. § 156.  First,

as noted above, Congress explicitly delegated certain duties to FDA to implement that statutory

provision.  See, e.g., 35 U.S.C. §§  156(d)(1)(C), 156(d)(2)(A)(ii), 156(d)(2)(B)(i), and

156(d)(2)(B)(ii); see also Astra v. Lehman, 71 F.3d at 1578-79.  Second, the D.C. Circuit has

recognized that deference to FDA is appropriate in the context of the integrated patent and drug

approval provisions of the Hatch-Waxman Amendments, and the same reasoning applies to the

GAD/PTR Act.  See Apotex, Inc. v. Thompson, 347 F.3d 1335, 1352 (Fed. Cir. 2003)

("Deference is due to an administrative agency's regulations particularly when the subject matter

of the regulatory authority is a 'highly detailed' regulatory program to which the agency has

brought its 'specialized expertise,' . . . a characterization that aptly describes the FDA's role in

the context of the regulatory scheme created pursuant to the Hatch-Waxman Act.") (quoting

Mead, 533 U.S. at 235).

　　　　Furthermore, Chevron deference extends to administrative determinations that are not

embodied in rulemaking or formal adjudication, including, as in this case, a federal register

notice and a decision letter setting forth the agency's statutory constructions of provisions of the

17

FDCA.  See Apotex, Inc. v. FDA, No. 06-5060, 2007 WL 754768 (D.C. Cir. Feb. 23, 2007) ("the district judge's opinion, which grants Chevron deference to the FDA's statutory interpretation of 21 U.S.C. § 355(j)(5)(B)(iv) embodied in FDA approval letters (i.e., informal adjudications), is supported by the Supreme Court's post-Mead decision in Barnhart v. Walton, 535 U.S. 212, 222, . . . (2002), as well as our own decision in Mylan Laboratories, Inc. v. Thompson, 389 F.3d 1272, 1279-80 (D.C. Cir. 2004)").

## II.    FDA's Determination is Consistent with the Plain Language of 35 U.S.C. § 156(g)(4)(B)(ii).

FDA's determination of the beginning of the approval phase for the Cydectin NADA is consistent with the unambiguous language of 35 U.S.C. § 156(g)(4)(B)(ii).  That section defines the approval phase as follows:

> the period beginning on the date the application was initially submitted for the approved animal drug product under subsection (b) of section 512 [of the FDCA] and ending on the date such application was approved under such section.

35 U.S.C. § 156(g)(4)(B)(ii) (emphasis added).  The critical elements for determining the beginning of the approval phase are unambiguous and plainly stated – for the approval phase to begin, an application under section 512(b) of the FDCA (21 U.S.C. § 360b(b)) is required.

Section 360b(b) in turn spells out the required contents of an application.  An application submitted under section 360b(b) shall include all information required by 21 U.S.C. § 360b(b)(1):

> Any person may file with the Secretary an application with respect to any intended use or uses of a new animal drug.  Such person shall submit to the Secretary as a part of the application (A) full reports of investigations which have been made to show whether or not such drug is safe and effective for use; (B) a full list of the articles used as components of such drug; (C) a full statement of the composition of such drug; (D) a full description of the methods used in, and the facilities and

controls used for, the manufacture, processing, and packing of such drug; (E) such samples of such drug and of the articles used as components thereof, of any animal feed for use in or on which such drug is intended, and of the edible portions or products (before or after slaughter) of animals to which such drug (directly or in or on animal feed) is intended to be administered, as the Secretary may require; (F) specimens of the labeling proposed to be used for such drug, or in case such drug is intended for use in animal feed, proposed labeling appropriate for such use, and specimens of the labeling for the drug to be manufactured, packed, or distributed by the applicant; (G) a description of practicable methods for determining the quantity, if any, of such drug in or on food, and any substance formed in or on food, because of its use; and (H) the proposed tolerance or withdrawal period or other use restrictions for such drug if any tolerance or withdrawal period or other use restrictions are required in order to assure that the proposed use of such drug will be safe.

21 U.S.C. § 360b(b)(1) (emphasis added); see also 21 C.F.R § 514.1(b); Guidance #132, AR

110-112 (describing the technical sections which may be submitted for phased review to meet the

requirements of 21 C.F.R. § 514.1).

      Based on these plain and unambiguous terms, FDA properly determined that the approval

phase of Cydectin began on January 13, 1998. See May 7, 2008, Letter, AR 181-185; Cydectin

Notice, 71 Fed. Reg. 54993, AR 119-123. Although plaintiffs had made earlier submissions to

the INAD file, those submissions did not constitute an "application" within the meaning of

section 156(g)(4)(B)(ii). It is uncontroverted that Wyeth submitted the Cydectin NADA on

January 13, 1998; indeed, Wyeth concedes this point. Compl. ¶ 68; see also May 7, 2008, Letter,

AR 185; Cydectin Notice, 71 Fed. Reg. 54993, AR 121-122. Furthermore, not until January 13,

1998, was the final technical section "complete letter" issued to plaintiffs. Compl. ¶¶ 64, 68.

Therefore, prior to January 13, 1998, plaintiffs' application  could not have contained all

information under 21 U.S.C. § 360b(b)(1) and 21 C.F.R. § 514.1(b).

      Plaintiffs allege that their submission of information and data to the INAD file on August

19

8, 1995, marked the beginning of the approval phase.  Compl. ¶¶ 73, 102.  Plaintiffs concede, however, that this submission was the first of several submissions of technical sections to the INAD file.  Compl. ¶¶ 57, 59, 61-65.[1]  Plaintiffs base their argument on the statutory language "initially submitted" – while ignoring the language "application under [section 360b(b)]" – to assert that the submission of virtually any piece of information to an INAD file is sufficient to trigger the approval phase, regardless of whether an application had actually been submitted.  See Compl. ¶ 102; see also Request, AR 138.  However, the statute requires the initial submission of an "application."  There is nothing in the statute to indicate that the submission to an INAD file of one (or several) of the many different sections required qualifies as an application.  See 35 U.S.C. § 156(g)(4)(B)(ii).  Plaintiffs also rely on an FDA regulation, 21 C.F.R. § 60.22(f), which provides that an application is "initially submitted on the date it contains sufficient information to allow FDA to commence review of the application."  See Compl. ¶ 108.  This regulation, however, is consistent with the statute in referring to submission and review of the application, which, as discussed above, is required by the FDCA to contain all information necessary for review.  Plaintiffs' submission of only one technical section did not satisfy the requirements for an "application" under 21 U.S.C. § 360b(b)(1) and 21 C.F.R. § 514.1(b) and therefore did not trigger the approval period under section 156(g)(4)(B)(ii).  See May 7, 2008, Letter, AR 185; Cydectin Notice, 71 Fed. Reg. 54993, AR 121-22.

---

[1] In fact, plaintiffs admit to submitting information to the INAD file as late as January 9, 1998. Application for Extension of Patent Term, AR 102.  On January 9, 1998, plaintiffs claim to have submitted a protocol pertaining to a residue depletion study in pre-ruminating calves.  Id.  Four days after this submission of information to the INAD file, on January 13, 1998, plaintiffs submitted the Cydectin NADA.  Id.; Compl. ¶¶ 68, 84; May 7, 2008, Letter, AR 185.

Accordingly, FDA's application of the unambiguous terms of the statute to calculate the beginning date of the approval phase for the Cydectin NADA should be upheld under <u>Chevron</u> step one.

**III.    Even if 35 U.S.C. § 156(g)(4)(B)(ii) Were Ambiguous, FDA's Reasonable Interpretation is Entitled to Deference**

Even if the Court were to find the language of 35 U.S.C. § 156(g)(4)(B)(ii) ambiguous, the Court should defer to FDA's interpretation of statute under <u>Chevron</u> step two because that interpretation is consistent with the language, structure, and purpose of the statute, and is supported by legislative history, sound policy, and long standing agency precedent.  Under <u>Chevron</u> step two, courts defer to an agency's permissible construction of the statute, even if it is not the only reading nor the one the court would have reached.   <u>See</u> <u>Chevron</u>, 467 U.S. at 843-44 & n.11.

FDA's determination – that an application that satisfies the requirement of 21 U.S.C. § 360b(b)(1) and 21 C.F.R. § 514.1(b) must be submitted to trigger the approval phase of a new animal drug – is supported by the legislative history of the Hatch Waxman Amendments.  The House Report accompanying the Hatch Waxman Amendments notes that in the definition of the "regulatory review period,"

> For purposes of determining the regulatory review period and its component periods, an <u>application</u> for agency review is considered to be "initially submitted" if the applicant has made a deliberate effort to submit an <u>application containing all information necessary</u> for agency review to begin.

H.R. Rep. No. 98-857, pt. 1, at 44 (1984) (emphasis added).  Congress' use of the term "application" in this report (as it ultimately did in the statute) demonstrates that, contrary to plaintiffs' assertion, Congress did not intend that a mere submission of partial information and

data to an INAD file could begin the approval phase.  Moreover, the legislative history specifies that the application must contain "all information necessary" for agency review.  Therefore, FDA's position that an application, including all the information under 21 U.S.C. § 360b(b)(1) and 21 C.F.R. § 514.1(b), is required for the approval phase to begin, is fully supported by the legislative history.

FDA's interpretation is entitled to deference also because FDA reasonably balanced the complex policy considerations of patent term restoration and phased review.  See Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 707 (1995) (when interpretation of a statute involves a "complex policy choice," the court should be especially reluctant to substitute its judgment for the agency's).  The purpose of the phased review process is to create greater efficiencies that facilitate the approval of new animal drugs.  Guidance #132, AR 108; May 7, 2008, Letter, AR 111.  A more efficient and shorter regulatory review period for a new animal drug will generally result in that drug entering the market faster.  The purpose of the patent term extension provisions of the Hatch-Waxman Amendments and the GAD/PTR Act is to allow for a patent term extensions when the patent life of a new animal drug is lost during a period of regulatory review.  Pub. L. No. 98-417, 98 Stat. 1585 (1984); Pub. L. No. 100-670, 102 Stat. 3971 (1988).  Therefore, in blending these policy goals, it follows that, if the patent life lost during a period of regulatory review is decreased because of the phased review process, the length of the patent term extension should be limited accordingly.  FDA has explained this balancing of policies in its guidance to industry, stating:  "Because FDA intends that the time it takes to approve an application that qualifies as an Administrative NADA usually will be shorter than the time it takes to approve a traditional NADA, a new animal drug that was the subject of

22

an Administrative NADA is likely, in most cases, to receive a shorter patent term extension than it would have received had it been the subject of a traditional NADA."  Guidance #132, AR 114. To further balance the policy considerations, FDA has left the decision to utilize traditional or phased review of a new animal drug to the sponsor.  Id., AR 109.  Wyeth chose to seek approval of Cydectin through phased review; it was free to use whichever review process it deemed appropriate.

Wyeth seeks to frustrate the balance of these policies.  Wyeth's position would allow applicants to submit virtually anything to FDA and then contend that they had "started" the approval phase.  Such an attempt to gain a benefit clearly not intended by the statute should be rejected.

Based on FDA's determination of the regulatory review period for Cydectin, the USPTO has indicated that plaintiffs are entitled to 1,434 days of additional patent protection for Cydectin. Compl. ¶ 88.  Therefore, the expiration date of the '154 patent is currently March 14, 2011. Compl. ¶ 89.  Thus, in this case, the policy goals of patent term restoration and phased review were both realized.  The approval phase for Cydectin was efficient (lasting a mere 16 days), allowing for a quick entrance onto the market, and plaintiffs were still entitled to approximately 3.9 years of patent term extension to recoup the patent life lost during the testing phase of Cydectin.  Compl. ¶¶ 82, 88.

FDA's interpretation is entitled to deference also because it reflects long standing agency practice.  See Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 740 (1996) ("To be sure, agency interpretations that are of long standing come before us with a certain credential of reasonableness, since it is rare that error would long persist.").  FDA has notified regulated

23

industry of this practice as guidance.  <u>See</u> Guidance #132, AR 107-114; <u>see</u> <u>also</u> CVM Update 1995, AR 1-36 (for the phased review of new animal drugs, "[t]he sponsor may submit an NADA at anytime, but the NADA <u>must address all technical sections of the NADA</u> . . . .  If the sponsor has a submission containing data . . . under the INAD, the sponsor must. . . request incorporation into the NADA.").

As noted above, agency precedent further supports the agency's position.  FDA has consistently determined that the approval phase for a new animal drug using the phased review process does not begin until an application has been submitted which includes all required information.  <u>See, e.g.</u>, Neutersol Notice, 69 Fed. Reg. 40944 (July 7, 2004); Anipryl® Notice, 63 Fed. Reg. 41578 (August 4, 1998); Ivomec® Notice, 63 Fed. Reg. 36922 (July 8, 1998).

Although plaintiffs argue that the 16-day approval phase for Cydectin was "unreasonable," Compl. ¶ 3, that is not an unreasonable time period for the phased review procedure.  <u>See, e.g.</u>, Neutersol Notice, 69 Fed. Reg. 40944 (the applicable regulatory review period for the new animal drug Neutersol was over 11 ½ years, but only 34 days of this time occurred during the approval phase); Anipryl® Notice, 63 Fed. Reg. 41578 (the applicable regulatory review period for the new animal drug Anipryl® was over 6 years, but only 54 days of this time occurred during the approval phase); Ivomec® Notice, 63 Fed. Reg. 36922 (the applicable regulatory review period for the new animal drug Ivomec® was over 6 years, but only 17 days of this time occurred during the approval phase).  As these examples document, for FDA to determine that the approval phase was only a tiny fraction of the total regulatory review period is not unusual for the phased review process.

Plaintiffs allege that FDA treats animal and human drugs differently, and this differential

24

treatment is arbitrary and capricious. Compl. ¶ 95 (citing <u>Bracco Diagnostics v. Shalala</u>, 963 F. Supp. 20 (D.D.C. 1997)). However, the case plaintiffs cite for that proposition is inopposite: it held that FDA must classify similar products, which meet both the definition of a drug and a device, as the same type of product. <u>Id.</u> at 27. The case at hand is distinguishable. First, FDA does not treat animal drugs differently from human drugs. FDA's treatment of new animal drugs going through phased review correlates to the "fast track" and "rolling review" of human drug applications. The approval phase under those human drug programs does not begin until an application that includes all required technical information has been submitted. <u>See, e.g.,</u> Regulatory Review Period for Purposes of Patent Extension; Tarceva, 71 Fed. Reg. 57546 (Sept. 19, 2006); Regulatory Review Period for Purposes of Patent Extension; Macugen, 71 Fed. Reg. 54998 (Sept. 20, 2006); <u>see also</u> May 7, 2008, Letter, AR 185.

Although plaintiffs allege that FDA's determination of the regulatory review period of the human drug FUZEON® ("Fuzeon") was inconsistent with its decision regarding Cydectin, Compl. ¶¶ 92-94, FDA's decisions were in fact consistent. Fuzeon's sponsor, similar to plaintiffs here, argued that the approval phase began when "the first module" was submitted to FDA. <u>See</u> Regulatory Review Period for Purposes of Patent Extension; Fuzeon, 71 Fed. Reg. 54996, 54997 (Sept. 20, 2006) ("Fuzeon Notice"). FDA disagreed and determined that the "approval phase begins when the marketing application is complete." <u>Id.</u> FDA's determination that the approval phase of Fuzeon did not begin until an application that included all required technical information had been submitted is consistent with FDA's determination of the regulatory review period of Cydectin. <u>Compare</u> Fuzeon Notice, 71 Fed. Reg. 54996 <u>with</u> Cydectin Notice, 71 Fed. Reg. 54993.

In sum, because FDA properly applied the plain language of the statute, and its decision is supported by legislative history, sound policy, and long standing agency precedent, this Court should defer to FDA's reasonable decision.

## CONCLUSION

For the foregoing reasons, plaintiffs' complaint should be dismissed.

Of Counsel:                                    Respectfully submitted,

THOMAS R. BARKER                               GREGORY G. KATSAS
Acting General Counsel                         Assistant Attorney General

GERALD F. MASOUDI                              C. FREDERICK BECKNER III
Associate General Counsel                      Deputy Assistant Attorney General
Food and Drug Division

ERIC M. BLUMBERG                               EUGENE M. THIROLF
Deputy Chief Counsel, Litigation              Director

JAMES R. JOHNSON                               _____/s/_____
Assistant Chief Counsel, Litigation            DRAKE CUTINI
U.S. Dept. of Health & Human                   Attorney
  Services                                     Office of Consumer Litigation
Office of the General Counsel                  U.S. Department of Justice
5600 Fishers Lane, GCF-1                        P.O. Box 386
Rockville, Maryland 20857                       Washington, DC 20044
Telephone: (301) 827-5212                       Telephone: (202) 307-0044
                                               Facsimile: (202) 514-8742
                                               drake.cutini@usdoj.gov

SYDNEY O. JOHNSON, Jr.
Acting Solicitor

NATHAN K. KELLEY
RAYMOND T. CHEN
Associate Solicitors
U.S. Patent and Trademark Office
Office of the Solicitor
P.O. Box 15667
Arlington, VA 22215
(571) 272-9035

Date: August 8, 2008